OPINION
Appellant Tina McWhorter Lambros is appealing the decision of the Stark County Court of Common Pleas, Juvenile Division, that granted permanent custody of her children to the Stark County Department of Human Services ("Agency"). The facts giving rise to this appeal are as follows.
Appellant is the biological mother of three minor children: Felicia McWhorter, born November 12, 1986; Christina Wiley, born February 25, 1988; and Edward Wiley, born January 1, 1989. Michael Carr is the biological father of Felicia McWhorter. Appellant last saw Mr. Carr in 1986. Mr. Carr had never visited or provided support for Felicia McWhorter. Paul Wiley is the biological father of Christina and Edward Wiley. Appellant last saw Mr. Wiley in 1989 and has not visited or supported the children since that time.
The Agency first became involved with appellant and her children in August of 1987. The Agency removed the children from appellant's custody. However, the trial court returned custody, to appellant, in September of 1988. The Agency again removed the children in August of 1989. Following this second removal, the trial court denied the Agency's motion for permanent custody and instead placed the children in long term foster care. The trial court found appellant's primary problem was with housing.
The trial court again denied the Agency's motion for permanent custody on October 27, 1991, and continued long term foster care for the children. The trial court ordered the Agency to aid appellant in obtaining appropriate housing for the purpose of reunification. In 1992, appellant married Gust Lambros. Mr. Lambros had previously plead guilty to one count of gross sexual imposition in 1990 and served eighteen months in a state institution. Appellant married Mr. Lambros despite her social worker's advice not to do so.
Appellant had supervised visitation, with the children, every other week and she regularly visited with them. However, the trial court terminated appellant's visitation with the children in October of 1994, upon the motion of the Guardian Ad Litem. The children's counselor, Deborah Park, recommended that visitation cease because of behavioral problems following the visits.
The trial court granted the Agency's motion for permanent custody on June 27, 1997. Appellant timely filed her notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT'S JUDGMENT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I, II
We will address appellant's two assignments of error simultaneously as both concern whether the trial court's grant of permanent custody to the Agency is against the manifest weight of the evidence. We find the trial court's grant of permanent custody is not against the manifest weight of the evidence.
As a reviewing court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus.
The relevant statute, in reviewing appellants' assignments of error, is R.C. 2151.414. This statute provides:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
In determining best interest of the child, R.C. 2151.414(D) provides:
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 * * * or division (C) of section 2151.415 * * * of the Revised Code, the court shall consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Based upon our review of the record, we find the trial court's determination that it was in the best interest of the minor children to grant permanent custody to the Agency is not against the manifest weight of the evidence. We find the following testimony, presented at trial, supports this conclusion.
Susan Tennill, a parenting instructor at Goodwill, testified that appellant demonstrated difficulty in absorbing information and then transferring what she absorbed into action. Tr. at 116-117. Although appellant loved her children, she did not understand the necessity to protect them. Tr. at 118. Susan Tennill further observed that appellant was very childlike in her interaction with the children. Tr. at 120. During her visits with the children, appellant had difficulty focusing on more than one child at a time. Tr. at 121. The children would often wonder off and appellant would be unaware of the fact. Tr. at 121. Further, Susan Tennill testified that appellant did not grasp the seriousness of her decision to marry Mr. Lambros, a convicted child sex offender. Tr. at 123. Appellant indicated to Susan Tennill that she had no concerns about the safety of her children with Mr. Lambros and that she knew he would not do anything to the children. Tr. at 125.
Linda Ledgerwood, the Agency's family service worker, also testified. She referred appellant and Mr. Lambros to all services, according to the case plan, including Stark Metropolitan Housing to help appellant find housing. Tr. at 32-38, 51-53. Linda Ledgerwood also made referrals for appellant to several different counseling agencies for the psychological evaluation, due to some of the agencies' refusal to perform the evaluation. Tr. at 32-38. Linda Ledgerwood also supervised visits between appellant and the children and stated that appellant was easily overwhelmed, at visitation, and could not control and care for all three of the children. Tr. at 34-35.
Dr. Collin Myers testified regarding his psychological evaluation he performed on appellant. This evaluation revealed that appellant suffered from an obsessive compulsive personality disorder, she could be extremely submissive to others in her behavior, and she tries to comply with authority figures. Tr. at 279. Dr. Myers also testified that appellant's intelligence fell in the borderline range. Tr. at 280. Dr. Myers observed that appellant was extremely dependent on Mr. Lambros for her own needs. Tr. at 287-288. Dr. Myers stated that he would question her ability to parent the children unless there was someone stronger to help guide her. Tr. at 291.
The children's therapist, Deborah Park, also testified. At the time of trial, Deborah Park had been counseling the children for three and one-half years. Tr. at 248. None of the children had seen appellant for approximately two years. Tr. at 249. Both Felicia and Christina were addressing their anger toward appellant and Edward was dealing with his ADHD problems and appropriate behavior. Tr. at 249-250. Ms. Park testified that both Felicia and Christina are aware of the neglect and abuse they suffered while in appellant's care and they blame her for it. Tr. at 251.
Ms. Park observed that all the children suffered from severe behavior problems around visitation with appellant, which eventually led to the termination of visitation. Tr. at 251-252. The children were relieved when visitation terminated and resisted any mention of further visits with appellant. Tr. at 252. Ms. Park testified that none of the children have a relationship with appellant and, in her opinion, the children need stability. Tr. at 264.
Robert White, a licensed professional clinical counselor, from Northeast Ohio Psychological Associates, and an expert in the area of sex offender treatment, testified regarding his diagnosis and treatment of Mr. Lambros. Mr. White performed a sexual offender assessment in regards to Mr. Lambros. This assessment revealed that Mr. Lambros has an impulse control problem, accompanied with poorly thought out behavior. Tr. at 178, 181. Mr. White also diagnosed Mr. Lambros as suffering from pedophilia. Tr. at 197. Further, an interview with Mr. Lambros revealed a substantial amount of sexual conduct with children ranging from age six to age eleven. Tr. at 37-41.
Mr. White recommended that Mr. Lambros undergo a structured sex offender treatment program. Tr. at 181-182. However, even with treatment, prognosis would be poor due to his diagnosis of pedophilia. Tr. at 184, 196-197. Mr. Lambros did begin structured sex offender treatment at Melymbrosia with Phillip Heagerty in April of 1996 and was currently attending group treatment for sexual offenders, at the time of trial. Tr. at 209, 214. Mr. Heagerty testified that he did not believe Mr. Lambros had fully disclosed his abusive behavior at that point and that more would be forthcoming in the future. Tr. at 219.
Mr. Heagerty believed treatment for Mr. Lambros would be necessary for approximately eighteen to thirty-six months. Tr. at 219, 220. Mr. Lambros did not believe he was at any risk to re-offend, however, Mr. Heagerty was unable to point to any skills Mr. Lambros had learned, in treatment, which would help him with relapse potentials. Tr. at 238. Mr. Heagerty recommended that Mr. Lambros not have any contact with the children. Tr. at 238.
Regarding the best interest of the children, evidence was presented that all three children were young and healthy, who resided together in the same foster home. Tr. at 336. The children were bonded to each other and their foster family and had been living with their foster family since April, 1990. Tr. at 336. Further, the foster family expressed an interest in adopting the children. The younger sibling of the children was also placed in this foster home and the foster parents were also interested in adopting her. Tr. at 338. Based upon the above evidence, we find the trial court's determination, that it was in the minor children's best interest to grant permanent custody to the Agency is not against the manifest weight of the evidence.
However, in addition to the best interest determination, the trial court must also consider the factors set forth in R.C.2151.414(E)(1). Section (E) provides as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
The trial court found the following factor present under R.C.2151.414(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
The evidence discussed above clearly supports the conclusion that appellant has failed to remedy the situation that originally caused the children to be removed from her custody. Gust Lambros, with whom appellant resided, was currently in treatment due to his diagnosis as a pedophile. All professionals that testified, at trial, recommended that the children not be around him. Further, appellant was very dependent on Mr. Lambros and nothing in appellant's psychological or parenting abilities demonstrated that she would be able to protect or parent the children.
Based upon the above evidence, the trial court's judgment terminating appellant's parental rights is not against the manifest weight of the evidence.
Appellant's first and second assignments of error are overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Farmer, P. J., and Hoffman, V. J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.